Filed 4/13/15  In re Matthew S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# COPY

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re MATTHEW S. et al., Persons Coming Under the Juvenile Court Law. | C076913 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. Nos. 12JVSQ2941401, 12JVSQ2941501, 12JVSQ2941601, 13JVSQ2994601) |
| Plaintiff and Respondent, | |
| v. | |
| SHIRLEY C. et al., | |
| Defendants and Appellants. | |

Shirley C. and Gary C., parents of the minors, appeal from orders of the juvenile court terminating their visitation.  (Welf. & Inst. Code, § 366.21, subd. (h) [further undesignated statutory references are to the Welfare and Institutions Code].)  The parents argue the juvenile court abused its discretion by, according to them, allowing the Shasta

1

County Health and Human Services Agency (Agency) to have absolute discretion to determine whether any visitation would occur. We disagree and affirm the juvenile court's orders.

The three older minors, Matthew, age 4; Braylon, age 2; and Nevaeh, age 1, were first removed from parental care in August 2012 due to the parents' methamphetamine use and ongoing domestic violence. The court adopted a reunification plan in October 2012 and over the next several months, the parents complied with the plan and made progress toward reunification. We note that Gary C. is the biological father of Braylon, Nevaeh and a fourth child, Dustin and the presumed father of Matthew. The terms "father" and "parents" refer only to Gary C. because Matthew's biological father is not a part of the case.

The court returned the minors to the parents in August 2013 under a family maintenance plan. At the review hearing in October 2013, the court continued the family maintenance plan. Dustin was born shortly before the October review hearing.

In December 2013, the Agency filed supplemental petitions to again remove Matthew, age 5; Braylon, age 3; and Nevaeh, age 2, from parental custody due to the parents' relapse into methamphetamine use and failure to comply with the family maintenance plan. The Agency also filed an original petition to remove two-month-old Dustin from parental custody for the same reasons. The court detained the minors and set visitation at one hour one time a month. During the detention hearing, father became angry and started to storm out of the courtroom with threats to hide the minors. Mother also lost control, began to scream foul names at the social worker and the deputy county counsel and behaved contemptuously to the court. Both parents were detained in the courthouse until the minors were in protective care.

2

The court sustained the petitions. At the disposition hearing in March 2014 the court terminated services as to the three older minors, bypassed services as to the youngest and set a section 366.26 hearing. Father left the courtroom prior to the end of the hearing and advisement of rights.

The report for the section 366.26 hearing stated the minors were moved to an adoptive placement in May 2014. The report described visits as inappropriate, in part, because the parents tried to ask the minors where they were currently placed and discussed the case with them. It was necessary to have security present in visits because father had made threats to abscond with the minors. The parents became upset during visits about contrived issues and their behavior caused anxiety for the minors. Matthew was anxious and excited before visits and had the most reaction to visits. Braylon had some negative behaviors for several days after visits. Nevaeh and Dustin were indifferent to visits.

At the section 366.26 hearing in June 2014, the Agency requested a continuance to complete notice and asked for a finding that further visits would be detrimental to the minors. Minors' counsel wanted an opportunity to speak to Matthew before the court decided the visitation issue. The court was not prepared to make a detriment finding and set a hearing to address the issue on July 9, 2014.

The Agency filed an addendum report on July 8, 2014. The report stated that a confidential reporter said Matthew appeared to be afraid of father and that in May 2014, the parents had told friends they intended to kidnap the minors using their van. The report detailed an incident in May 2014 where social workers were investigating a report of the parents taking care of some young children. During the investigation father became very hostile. The report also discussed the July visit which had been scheduled for the first of July but was rescheduled to occur after the July 9 hearing. The Agency had not informed the parents of the change at the June 2014 hearing, but tried unsuccessfully to call them on several occasions in late June to tell them of the change.

The parents arrived for the visit only to be informed it had been cancelled. Program Manager Middleton was aware of both the change and the attempts to contact the parents. Middleton met the parents in the lobby of the building. The situation was volatile with father screaming, making threats and posturing as if to swing a punch at Middleton. Mother tried to calm him but was unsuccessful. Another Agency client present in the lobby was terrified. Ultimately, father did make physical contact with Middleton. Although Middleton was not injured, the Agency believed the incident showed father's escalation and the risk of violence he posed. A police officer was in the building and was asked to assist in calming the situation. Father was heard swearing at the officer. The report stated the Agency could not ensure the safety of anyone in contact with the parents due to their escalating behavior and again asked the court to find visits detrimental to the minors.

At the July 9, 2014, hearing on visitation, minors' counsel informed the court that the minors looked at visits as an opportunity to get things rather than spend time with the parents. Minors' counsel reported that both Matthew and Braylon were sad before visits knowing the parents had made bad choices. Both boys said they would like to see the parents but only because the parents brought them things. Matthew was nervous about visits because he was afraid the parents would not do the right things in visits.

Mother testified she had not told friends she intended to kidnap the minors and she no longer owned a van. Mother said she had called twice before the July 1, 2014, visit to confirm the visit would occur and was told that it would. When they arrived they were told the visit was cancelled but not why. She had no calls or voice mails on her cell phone regarding cancellation. Mother said she asked only general questions about the minors' lives during visits and did not try to get information about where they currently lived. Mother felt that the Agency would know what the parents' reaction would be if a visit was cancelled without notice.

4

Father testified they were given no explanation for the cancelled visit. He stated that the Agency knew he would be angry if a visit was cancelled without notification and he received no phone calls or voicemails about the visit. Father further stated his questions to the minors in visits were about lifestyle, not attempts to locate their current placement. Father testified they had not had the van since early June 2014. He agreed that his behavior at the Agency was not consistent with his anger management classes but believed he had been baited with the expectation that he would react. He denied hitting the program manager and said she was lying about the incident.

In argument, counsel tried to use the lack of notice of the visit as an explanation of father's behavior. The court noted that whether or not the parents were notified of the cancelled visit was "really not relevant." The court was of the opinion that "[i]f you know you're being baited, you would be more likely to be under control" and that father's "conduct is inappropriate for any situation." Counsel also argued that there was no reason for the cancellation except to avoid having to facilitate a visit either because a detriment finding might be made or parental rights might be terminated before the visit could occur. The Agency's response was that there was still a visit scheduled for July and that counsel advised rescheduling until after the hearing on visitation due to concerns for the safety of the minors.

The court found that the Agency had acted within the parameters of the visitation order of one hour one time a month. The court explained that it did not set dates or time spans between visits, only that they occur one time a month. The court further clarified that the Agency had discretion to change the date based on the information they had in an effort to protect the minors. The court also noted that the parents had "credibility issues" based on prior hearings and that father continued to have anger control issues. However, the conduct of the parents at the Agency on finding the visit had been cancelled was "entirely inappropriate" and placed those in the area in fear of physical harm. The court

found clear and convincing evidence that visitation would be detrimental to the physical and emotional well-being of the minors and terminated visitation.

## DISCUSSION

Mother argues the court abused its discretion in allowing the Agency to have absolute discretion to decide whether she could visit her children. Father joins mother's brief in lieu of filing a separate opening brief.

The court has broad discretion in fashioning visitation orders which we review for abuse of discretion. (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465; *In re Megan B.* (1991) 235 Cal.App.3d 942, 953.)

The juvenile court is "*required* to permit continued visitation pending the section 366.26 hearing absent a finding visitation would be detrimental" to the minors. (*In re David D.* (1994) 28 Cal.App.4th 941, 954, original emphasis; § 366.21, subd. (h).) However, "[n]o visitation order shall jeopardize the safety of the child." (§ 362.1 subd. (a)(1)(B).) Further, in making visitation orders, the court can properly delegate "the ministerial tasks of overseeing the right as defined by the court. . . . Such matters as time, place and manner of visitation do not affect the defined right of a parent to see his or her child and thus do not infringe upon the judicial function." (*In re Jennifer G.* (1990) 221 Cal.App.3d. 752, 757.) "Only when a visitation order delegates . . . the absolute discretion to determine whether any visitation occurs does the order violate the statutory scheme and separation of powers doctrine." (*In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374.) "[T]he role of the agency and its agent is subject to the juvenile court's supervision and control. Accordingly, if the agency is abusing its responsibility in managing the details of visitation, [the parents] may bring that matter to the attention of the juvenile court . . . ." (*Id.* at p. 1377.)

The court entered a visitation order at the detention hearing in December 2013 setting visitation at one time once a month. Neither parent objected to the order on any

6

ground. The order itself is well within the court's discretion since it sets the right to visitation and leaves the ministerial questions of time, place and manner to the Agency. The juvenile court's order did not delegate the power to determine whether any visitation would occur to the Agency or the social worker.

The parents' real argument is that the Agency's exercise of its limited discretion under the order constituted an unwarranted manipulation of father into a situation where his lack of anger control resulted in an extended outburst, despite his participation in both reunification and family maintenance services thus leading to a court-ordered termination of visitation. However, the record shows this was not an isolated incident. Thus, the court's termination of visitation prior to the date of the rescheduled visit did not allow the Agency to determine whether any visitation would occur.

During father's outburst when the parents were told the July visit was cancelled and rescheduled, witnesses feared for their safety. Father made physical contact with an Agency employee and swore at a peace officer who had been asked to de-escalate the situation. The court recognized father had been provoked, but concluded that his response was "entirely inappropriate." The record demonstrates that such outbursts were father's customary response to circumstances where he did not get his way. At the detention hearing in December 2013, father tried to storm out of the courtroom, made threats to hide the minors and had to be detained in the courthouse until the minors were placed in care. Mother's lack of anger control at that hearing resulted in a citation for contempt of court. As late as May of 2014 the parents were talking about absconding with the minors and had a van which they planned to use in the plot. Matthew was afraid of father and worried about whether the parents would do the right things in visits. The concern was well founded since the parents discussed the case in visits and tried to get information about where the minors had been placed.

The parents' hair-trigger responses to circumstances which upset them presented a significant risk not only to the minors but to visit supervisors and others in the vicinity.

7

As the court observed, rescheduling the visit was within the parameters of the visitation order and the action was taken to protect the minors. The court was not required to continue to offer visits which jeopardized the safety of the minors. (§ 362.1, subd. (a)(1)(B).) The orders terminating visitation were supported by substantial evidence of detriment to the minors and based on more than father's reaction to the delay of a single visit. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.)

DISPOSITION

The orders of the juvenile court terminating visitation are affirmed.


      HULL      , Acting P. J.


We concur:


      MAURO    , J.


      DUARTE    , J.